Council for the next case Sharma v. Garland 22-1496 can take the tables please. Our next case this morning is Sunil Kumar Sharma v. Merrick B. Garland case number 22-1496. Council for the petitioner please take the podium and put your appearance on the record. Good morning may it please the court. My name is Pablo Lozano. I'm a clinical student in the Harvard Immigration Clinic under the supervision of Philip Torrey. I represent the petitioner Sunil Sharma. I'd like to reserve three minutes for rebuttal. Yes you may. The sole issue on review in the instant matter is whether Mr. Sharma automatically derived U.S. citizenship upon meeting the requirements established in the derivative statute excuse me. Section 1432A5 presents two disjunctive clauses for a minor to derive citizenship from a naturalized parent either by residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parents or when the child thereafter begins to reside permanently in the United States while under the age of 18 years. The disagreement today is centered on the second clause of section 1432A5. I will first discuss the plain text of the statute which clearly establishes two pathways to derivative citizenship and second I will explain why the objective manifestation test is used to determine whether an individual resides permanently under the second pathway. First the statute's plain text makes clear that section 1432A5 unambiguously provides two distinct pathways for children of naturalized citizens to derive citizenship. The first pathway requires the minor up to be lawfully admitted for permanent residence and the second pathway states that a minor must begin to reside permanently and the plain text makes clear that the second pathway does not require that the minor be lawfully admitted as a permanent resident and this aligns with the court's decision in Thomas B. Lynch although the court did not affirmatively limit the issue presented here it carefully parsed through the statute and recognized this plain text reading. In fact two circuits both the ninth circuit and Garland an en banc decision and the second circuit and Mazzuzo v. Holder and a decision that actually projected the very BIA decision the government's relying on here today both agree with our plain text reading of the statute. Under your reading what was the objective manifestation? Your honor the objective manifestation is determining when the petitioner has resided permanently and in both Mazzuzo and Chenot the manifestation was satisfied when the petitioner submitted an application for adjustment of status which is consistent with the facts that Mr. Sharma has here today he submitted a petition for adjustment of status on January 3rd 1996. To be precise his mother initiated the proceeding and didn't he then abandon it? So your honor he did abandon the his interview however abandonment is immaterial to the incident matter and notably Chenot actually the mother and son didn't appear to their interviews but the court did not say that this was relevant to whether or not he had objectively manifested the intent to reside permanently it was not how far in the process the petitioner got or whether or not permanent residence is actually adjudicated it was the actual submission of the application for adjustment of status and we have that same same fact pattern today. Counsel your brief omitted a material fact actually a number of material facts you omitted to tell us that the agency had denied his application for permanent or his mother's application on his behalf for lawful permanent residence status and that thereafter he did nothing to challenge that. Then there are some additional facts which were in the record of decision which are quite inconsistent with the notion that objectively he had manifested an intent to remain here permanently. So let's go back are you saying that under circumstances where the application denied it he did not thereafter take an appeal that nonetheless the agency erred in deciding he had not met his burden of showing objectively permanent residence status? So our argument is that he met the manifestation test reside permanently upon the submission of application for adjustment of status. Regardless of what happened thereafter? Regardless of what happens thereafter. Okay and what is your authority for that? So your honor this is consistent with congress's intent to maintain and preserve a family unit and the provision has two clauses and the first pathway is again it provides derivative citizenship automatically for minors who already have lawful permanent residence. The second pathway is dealing with classes of minors that don't already have that status. So what this is doing is providing a situation in which that minor can objectively manifest his intent to reside permanently afterwards and with the submission of the application why that point of time matters is that you don't want to have a delay. The adjudication process could take years. There was no delay on these facts. I understand that you're a law student is that correct? That is correct. You were obligated in your brief to disclose to us this material fact about what happened merely because your theory considered that fact to be irrelevant. The does not excuse you from that obligation. The decision you are appealing from directly mentioned that and relied on that as a ground for its decision. So just take this as a learning experience. Thank you. Thank you your honor. So help me with this. Suppose if I'm understanding your argument the moment his mother filed the application you would say the manifestation of an intent objectively was made and complete. It would seem to therefore follow that suppose three days later when he found out his mother did that he said he wrote and said I don't want to be a United States citizen please withdraw my application. Under your theory I think you would still say there's an objective manifestation of intent? Your honor under the theory in plain text of the statute he would have derived citizenship upon the submission of the judgment of status. Whether his statement afterwards and the intent after that would be something you'd have to take up with a different proceeding. However he automatically derived citizenship at that point that he is a minor he's under the age he's under the guidance and support of his mother and his sole surviving parent in the situation. So the idea behind it is to preserve that family unit ensure that he's here and begins to reside permanently. That would be our reading your honor. And suppose the mother wrote and said she's withdrawing it? Your honor still under the plain text reading of the statute we would still argue that is upon the adjustment of that application that the citizenship is automatically derived. That application at that moment was still a bona fide application. But oftentimes when we have a discrete event that occurs and we're trying to determine its significance we aren't limited to facts that existed as of the moment that that act occurred. Subsequent acts may shed light on the significance that we abandonment sheds light on whether there was even a beginning. Your honor I could see in a separate case the totality of the circumstances being relevant to determining whether or not the manifestation was met. However the court need not reach that issue here. Our petitioner did not withdraw his application. He submitted it. It was his intent was to be submitted. He never withdrew it and our fact pattern still consisted with Chenot and Mwazuzu. Whereas the actual application itself that we're arguing is when he derives citizenship. But don't we have a finding of a withdrawal, an abandonment, and a denial? Your honor I'm arguing that abandonment is immaterial to the incident matter only because it's the actual submission adjustment status not how far in the process he had received. The second clause notably does not mention lawful admission permanent residence. In the clause itself in the definitions of permanent and residence within the statute it does not require lawful admission permanent residence. Notably other parts of the INA do mention lawful admission for a personal permanent residence as a requirement and a component part in addition. Going back to your statutory interpretation argument you would have us read the statute to say that upon the submission by a parent of a lawful application to establish LPR status that conclusively determines that you then get the benefit of the second pathway. But the statute is not written that way and even under your objective manifestation test the statute isn't written that way. Yes your honor well the statute it isn't speaks that directly the the general manifestation is still consistent with the the statute itself and congress's intent to have an objective administrable and efficient bright line test. So the test you're suggesting upon application for by a parent for an LPR status is clear and congress chose not to do that. So your honor is the question then why is it at that point that we're arguing that he automatically derived that citizenship? I'm asking you to reconcile the fact that congress knew very well how to adopt the test you are urging on us and chose not to do so. Your honor congress did not speak to it directly it's not specifically within the statute itself but it is still consistent with the statute. Notably it's addressing the fact that congress wanted an objective and efficient and administrable test and it's providing that it's not looking at subjective intent and the mental state of the applicant. It's looking at a specific point in time in which a court could quickly analyze whether or not this individual has in fact begun to reside permanently and and that's the what the test offers is is a quick analysis in which two courts have thoroughly analyzed the plain text and legislative history of the statute determined that this test meets that intent and is consistent with the statute. You've spoken of objective manifestation some of the courts that you're relying on speak of official objective manifestation and you say it's so is that the test is your test different than the official objective manifestation test? No your honor. Same test? The same test. And so an application for LPR in your view does it and you don't need to look at anything else after that is there some other way to officially objectively manifest the intent that has been recognized? I recognize my time is run out may I finish the question? Of course. I don't know of all the options but one option I could definitely think of your honor is that the the minor enlists in the military under the age of 18 with consent of the mother at 17 and a half. I would argue that's still an objective manifestation at that point of enlistment similar to the application it was at the point of the submission of the application that he met the judge of manifestation. I'll reserve the rest of my time for rebuttal your honor. Good morning your honor may it please the court if lawful permanent resident status is the privilege of being allowed to live and win this country as the INA defines it then citizenship is the ultimate prize for those who are born in this country or who have naturalized by showing that they owe permanent allegiance to this country. In short citizenship is not something that is easily attained. It's why even if a non-citizen marries a citizen and gains LPR status they're still made to wait three years before having to file yet another application to gain citizenship. Now 1432 85 yes it does confer citizenship automatically that's all the more reason to make sure that a bright line rule can be applied and in this case under the rule that Mr. Sharma proposes that would not be a bright line rule that would actually invite a lot of chaos and a lot of ambiguity and so it's our position that a rule that relies on status is a clear one and is a much more administrable one. Now you would dispute though that the ambiguity problem here arises in the first instance with the text called upon to construe. With the statute it seems relatively impossible to completely parse it in a logical way on its own. Sure so you know we do acknowledge that the two phrases are different if they were identical we wouldn't be here there wouldn't be this ambiguity and so when they say that the two phrases are different well yes we acknowledge that that's really assuming the conclusion that they want to reach now the question is how different Mr. Chen you are familiar with our Thomas opinion yes your honor okay in Thomas Chief Judge Barron analyzed the statute said well yes it is ambiguous but we don't need to decide in that case whether the agency's interpretation of the statute is correct because even under the test which the petitioner is advancing he simply fails. Why shouldn't we just adopt that model of decision here? So that decision I think they actually lay out why Mr. Sharma's preferred rule would not just be an unworkable one but it would actually sort of let in a lot of bizarre kind of outcomes. If you look at Mr. Thomas's case his mother had naturalized three days before his 18th birthday now that's a very short period of time he would have had to you know event some sort of official objective manifestation of intent that's really hard to do in three days I'd argue now we would say that because he came here when he was very young and because his mother had made several immigration filings including an application for a voluntary departure that let him stay for two years as well as an I-130 which is precursor to an I-45 that he had actually made lots of official objective manifestations because they're asking for the statutory language to mean that literally all of that wouldn't have counted what would have mattered is whether he had made some sort of official act during that three-day span because he didn't he failed under his own test now these are the kinds of outcomes that Mr. Sharma's preferred rule would invite and we think a better one a one that's much clearer and one that's much more governable is a rule that relies that rises or status now because I think opposing Mr. Zona did say that this should be something that's quickly analyzed and yes we agree it should be quickly analyzed but if you rely on status as a sole sort of criterion well that's not something that can be quickly analyzed that would actually be really difficult to show and to bear out and so it says where it really should be and that might not seem somewhat harsh but as seen in Mr. Thomas's case Mr. Sharma's preferred ruling also invites some harsh consequences now to return to the statutory language again yes so if you know I mean how many cases are we talking about with respect to this repealed statute what's the pipeline look like what's the worry here I mean the concern would be has suggested we might do as we did in Thomas right right right so for folks who have turned 18 after 2000 after the 2000 act I mean there the statutory language is very clear there's no ambiguity there so really we're talking about I'd say like the 50 years span between 52 and 2000 so that's 48 years and you know there'll be a lot of cases in that 48 years and under Mr. Sharma's you know more ambiguous rule basically anyone who would have filed an I-45 could derive application filing is not that hard to do what's harder to do is to actually show up for the all important interview and not just that but to be found admissible now in this case he was convicted of murder and it's not entirely clear at this point whether that's uh you know a crime of moral turpitude but we do know that if he had committed a crime of moral turpitude he wouldn't be admissible even for adjustment status now he's saying that simply because I filed it it doesn't really matter whether I was admissible or not it doesn't really matter whether I actually followed through with the application but we're saying no you do have to follow through with the application I mean well and beyond that you do have to have that official status at the very least you should be showing up for your interview and Mr. Lozano says that no all that matters is that he simply filed an application but a person can file an application with a fraudulence intent and would these people be able to derive citizenship which is the ultimate prize as I mentioned earlier we how we deal with ambiguous text it's a bit unusual now we don't have the usual agency interprets a statute and we then just take ordinary review here we've got a statute where we undertake de novo review of the legal questions and even the factual questions would not be decided by an agency that would be decided by a is there any chevron deference here in this case you argue there is in your brief but what's your authority for saying that we would have to defer to the agency's decision um so there is a circuit spread on whether a chevron deference is earned in this sort of situation um but uh I think the argument would be that the board has issued a definitive finding as which rule should dominate and it's a clear ruling and it's uh it's very reasonable that's our argument because and on top of that yes this statutory language is ambiguous and that's why the board had to come out with its ruling matter should know and actually pronounce its opposition on this issue and we think you know deference is over there but really our case we're not putting all of our argument on the chevron deference uh point we think that difference is owed but even if the court were to review this de novo we think that the statutory language and the historical background more than bear out the rule of the government is advancing um now with regard to the statutory language yes you know we do admit that it could have been written perhaps more concisely more compactly you know along the lines of the 2000 act um but the fact that it includes this pretty similar phrase begins to reside permanently shouldn't mean that it was that congress was trying to institute a rule that creates some bizarre outcomes and you know and I think the the the lexical argument and the historical argument are very much intertwined because you know mr sharma is saying that reside permanently can only be read generically whereas lawful uh permanent residence is a term of art and you know perhaps you read permanently can yes you know at first glance be read generically but if you actually look at the history of the dirt involving social law you would understand that actually it was closer to a more formal term I mean you see this term in the 1907 act 1940 uh act 1952 and 2000 so there's a there's a common thread running through all these acts and the understanding is and this is borne out not just by case law but by authoritative truces over the decades the common understanding is that permanently means lawful permanent residence take you back to judge lynch's question is one of your fallback arguments here that even if the petitioner's construction of the statue were correct and even if he could satisfy it by an objective manifestation as in thomas he fails to so sure even if the court were inclined to go with his preferred rule he would say he fails under that rule just like thomas failed under then my question is how do we wrap chenery into taking that approach given that the no agency itself has adopted that alternative rationale well I think the court would say that undertaking de novo review that it finds that it can take basically the first uh uh an open open inquiry into what the language actually means and so if the court were to find that it should adopt the subjective manifestation rule I you know I believe you can definitely sort of lay out argument for why they should abide by it um you know if the court were to issue it to me I think the agency would be bound to it to a large degree um but we only get to petitioner's argument under your view if we don't find chevron deference because this is de novo review and if we haven't found chevron deference because this is de novo review then we would not face the impediment of chenery in selecting an alternative grounds for deciding the case without deciding the statutory interpretation that's a very picky way to put yes your honor now to return to the history and this confusion between you know uh council I I think we do uh understand your argument um we are uh often obliged um under precedent and good judging not to reach to decide issues we don't have to decide um and as judge howard has pointed out this statute has been repealed um and it may yet occur that a case will come up which requires us to flatly uh look at the issue of uh the uh two issues uh whether the agency's interpretation is correct and whether any form of deference is due to it but um as I've uh suggested uh it seems to me uh that even under his test the abandonment of the uh lpr uh petition by not showing up at the interview um would tend to fail that test and yes isn't isn't that um a kind of narrower ruling um that that is correct your honor I think this case is quite close to uh thomas and if anything it might actually be easier to rule on this case um than than thomas without actually straying into this question of you know what's a more reasonable uh interpretation of the statute I mean in Mr. Sharma's case I understand he was very young and he might have been a catalogue youth but not all catalogue youths are committing murder out there and in his case it's not just murder fact it's the fact that he failed to show up for the all-important vital interview for his I-485 application and I understand there were intervening circumstances those circumstances were all of his own making I mean he said himself I was in trouble with the law at the very least you should understand that you do not have status in this country and you should try your best not to commit any major crimes even petty crimes and yet he he flagrantly failed to do that and so that yes under uh the kind of approach that you know the court rather than thomas I thought he would fall under his own preferred rule and said this petition should be denied thank you thank you just to return to Judge Kayada's question based on what you just said yes so Chenery is not a problem in that circumstance because we can hypothetically say good I mean how how does that work yes your honor I mean just that charity wasn't really the problem and thomas I don't think it would be a problem here if the court were to find that you know under either interpretation he still fails he can't prevail on his claim that he is a derived citizen if there are no other questions I will rest on the group that we've submitted thank you your honors thank you your honor two points on rebuttal first two other courts have found that there are two pathways to derivative citizenship in the statute both chenot and mazuzu in the ninth circuit en banc decision the second circuit's decision and second if there are any questions as to the underlying facts we should transfer to a district court unless there are further questions we respectfully ask the court grant the petition and thank you for your time thank you thank you mr lozano